**Cite as: Opinion No. 98-005**
**(February 5, 1998)**
**(unpublished)**


**CONSTITUTIONAL LAW – FREEDOM OF SPEECH – COMMERCIAL SPEECH – PROHIBITING ADVERTISING OF CASINO GAMBLING**


February 5, 1998


*The Honorable John R. Leopold*
*State Delegate*


You have requested our opinion on the constitutionality of legislation that would prohibit the advertising of casino gambling in Maryland media. In a prior letter of advice, a copy of which is attached, Assistant Attorney General Richard E. Israel advised that the legislation would not violate the free speech rights guaranteed by the First Amendment of the United States Constitution and Article 40 of the Maryland Declaration of Rights or the limitation on state power implicit in the Commerce Clause of the United States Constitution. Letter to Delegate John R. Leopold from Assistant Attorney General Richard E. Israel (September 4, 1997). While we agree with Mr. Israel's analysis and conclusion, a subsequent federal court decision warrants further discussion.


# I

## Legislative Proposal

House Bill 159, "Commercial Casino Gambling – Advertisements," bans casino advertising in all Maryland media: "A person in the State may not knowingly allow the advertisement of commercial casino gambling."[1] Violations of this prohibition are a misdemeanor punishable by substantial fines.

---

[1] The term "casino" is defined as an entity that "uses the word 'casino' as part of its proper name" or that "is in the business of conducting commercial casino gambling."

The preamble to the bill makes a number of legislative findings, including these: "Maryland has a substantial governmental interest in discouraging the demand for commercial casino gambling by the citizens of Maryland.... Commercial casino gambling establishments often advertise goods, services, and entertainment, such as food, hotel rooms, and concerts, that do not directly involve gambling to encourage individuals to participate in gambling activities offered by the casino ...." The preamble goes on to assert that: "A prohibition of the advertisement of commercial casino gambling activities on Maryland television and radio stations, in Maryland print media, and on Maryland billboards directly advances the interest of the State of Maryland in discouraging the demand for commercial casino gambling activities."

## II

### Prior Advice

Mr. Israel concluded that a legislative prohibition of this kind would not be constitutionally objectionable.[2] In particular, Mr. Israel analyzed the First Amendment issues raised by this advertising ban. Because the advertising would concern an activity lawful in other states and generally would not be misleading, a ban on the advertising would violate the First Amendment unless the ban furthered a substantial governmental interest, directly advanced that interest, and was no more extensive than necessary to serve the interest. *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n*, 447 U.S. 557, 566 (1980).

Mr. Israel advised that the *Central Hudson* test was satisfied. In so advising, he quite properly relied on the fact that the United States Supreme Court had upheld the constitutionality of a federal law, 18 U.S.C. §1304, that forbids lottery and other gambling advertising by broadcasters in states in which the gambling is illegal but that allows this advertising by broadcasters in states where the gambling is legal. *United States v. Edge Broadcasting Co.*, 509 U.S. 418 (1993).

---

[2] Mr. Israel's analysis was based on a bill that had been introduced in the Nebraska Legislature, which evidently was intended as the prototype of possible Maryland legislation.

# III

## Subsequent Decision

Three months after Mr. Israel's advice, the United States District Court for the District of New Jersey held unconstitutional both the federal statute and the implementing regulation of the Federal Communications Commission, 47 C.F.R. §73.121, as applied to advertising of commercial casino gambling. *Players International Inc. v. United States*, 1997 WL 780942 (D.N.J. December 19, 1997). Apparently under the view that *Edge Broadcasting* had been eroded by the Supreme Court's later decision in *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996), the federal court held that various exceptions to the advertising ban "defeat the government's ability to successfully maintain that the challenged regulation directly advances the government's interest in protecting society from the social problems promoted through gaming activities." Slip op. at 11.[3]

The exceptions permit advertising by state lottery agencies, Indian casinos, and government and non-profit organizations. *See* 47 C.F.R. §73.121(c). These exceptions, the court held, "allow the same activities the government believes caused significant harm." Slip op. at 10. "It is illogical," the court observed, "to believe that non-FCC regulated gaming, including casino gaming, does not promote the same social ills caused by FCC regulated gaming. Congress, in creating the exceptions in §1304 and its corresponding rules, did not suggest that Native Americans, charities, states or government organizations cause different social ills from those caused by regulated gaming." Slip op. at 7.[4]

This federal district court decision is not controlling in Maryland. Further, the court's analysis leaves much to be desired, particularly the court's failure to discuss *Edge Broadcasting*, the Supreme Court decision upholding the constitutionality of the very statute that the court found unconstitutional. Nevertheless, the decision suggests the need for careful attention to the legislative record underlying a ban on the advertising of casino gambling.

---

[3] The court held that "the government has a substantial interest in protecting the public by reducing participation in casino gambling." Slip op. at 6.

[4] The court also found that Congress could respond to these social ills directly, by "finding ways to restrict the conduct." Slip op. at 10.

While House Bill 159 prohibits all advertising for commercial casino gambling, with no exception for casinos operated by Indian tribes, it does not prohibit the advertising of other forms of gambling, including charitable gambling, slot machines on the Eastern Shore, bingo, and the State Lottery. To strengthen the bill against the kind of constitutional challenge that succeeded in the New Jersey case, the legislative record should document the assertion, already presented in the bill's preamble, that the State has a distinct interest in averting the more serious harms associated with commercial casino gambling, compared to other forms of gambling. As the preamble already notes, casino gambling uniquely uses inducements like complimentary food and beverages and comparatively low-priced entertainment to attract gamblers to the casino. Moreover, the casino environment itself is markedly different than any other gambling venue, the General Assembly might conclude, because of its round-the-clock operation and other alluring features.

## IV

### Conclusion

In summary, we agree with Mr. Israel that House Bill 159 is constitutional, but we recommend that a legislative record be developed to substantiate the State's interest in protecting its citizens against the harms that are particularly presented by commercial casino gambling.[5]

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions & Advice*

---

[5] An advertising ban is justifiable as the only available means for the General Assembly to try to prevent those harms. Unlike Congress, the General Assembly cannot prohibit commercial casino gambling in other states. *See* note 4 above.